UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DELROY KEMP,

                    Plaintiff,

        v.                                      **DECISION AND ORDER**
                                                03-CV-844S

LUCIEN J. LECLAIRE, THERESA KNAPP-DAVID,
DONALD SELSKY, RANDY JAMES,
C.O. BEA, DARRYL BORAWSKI, A. WELSH,
OFFICER A. BRIGZNA, D. MORRIS, A. MEZYDLO,
JAMES CONWAY and MS. ARNONE,

                    Defendants.

## I. INTRODUCTION

In this action, pro se Plaintiff Delroy Kemp alleges pursuant to 42 U.S.C. § 1983 that

Defendants violated several of his constitutional rights by, *inter alia*, repeatedly retaliating

against him for filing grievances against prison officials.   Presently before this Court is

Defendants' Motion for Summary Judgment.[1]  This Court has reviewed and considered the

motion papers and finds that oral argument is unnecessary.   For the following reasons,

Defendants' motion is granted in its entirety.

## II. BACKGROUND

### A.    Procedural History

Plaintiff's Complaint was entered on the docket on November 10, 2003.   Because

Plaintiff was granted *in forma pauperis* status, his Complaint was screened pursuant to 28

---

[1]In support of their Motion for Summary Judgment, Defendants filed the following documents: a memorandum of law, a Rule 56 Statement of Undisputed Facts, the Declaration of Aivars Brigzna, the Declaration of Randy James, the Declaration of Allan Welsh, the May 12, 2006 Declaration of Kim Murphy, Esq., and two Reply Declarations of Kim Murphy, Esq. filed June 30 and November 6, 2006.  In opposition to Defendants' motion, Plaintiff filed three of his own Declarations dated June 19, July 10, and November 28, 2006.

U.S.C. §§ 1915(e)(2)(B) and 1915A(a).  As a result of this screening process, this Court dismissed several defendants, primarily because Plaintiff failed to assert adequate claims against them.  (See Docket No. 5.)  On May 12, 2006, the remaining defendants filed the instant Motion for Summary Judgment.  The parties fully briefed the motion, and as of November 28, 2006, this Court took the matter under advisement without oral argument. The facts underlying Plaintiff's claims are discussed below.

**B.    Facts**

Plaintiff is an inmate in the custody of the New York State Department of Correctional Services ("DOCS").  (Defendants' Rule 56 Statement of Undisputed Facts ("Defendants' Statement"), ¶ 1.)  At one time, Plaintiff resided in the Great Meadow Correctional Facility.  (Defendants' Statement, ¶¶ 3, 4.)  DOCS transferred Plaintiff from Great Meadow to the Attica Correctional Facility on February 20, 2003.  (Defendants' Statement, ¶ 3.)  This transfer was effectuated because mental health professionals determined that Plaintiff would benefit from treatment through the Specialized Treatment Program ("STP") available at Attica.  (James Decl., ¶ 13.)  However, Plaintiff stopped attending STP shortly after arriving at Attica, despite being encouraged to continue. (James Decl., ¶ 14.)  Plaintiff alleges that he stopped attending because officers and inmates were verbally harassing him.  (Complaint, p. 9.)

The staff at Attica placed Plaintiff in the Special Housing Unit ("SHU") upon his arrival, which is a unit designated for inmates with disciplinary violations.  (Defendants' Statement, ¶ 3; James Decl., ¶ 6.)  Plaintiff's history includes 44 Misbehavior Reports related to threats and violence against staff.  (James Decl., ¶ 9.)

Plaintiff maintains that from the outset, Defendants undertook a campaign of

2

retaliation against him because he filed numerous grievances.  This retaliation included verbal and physical threats, punitive restraint and cell shield orders, an assaultive pat frisk, the denial of medical care and the opening of his legal mail.  These incidents are set forth below.

### 1.      Verbal and Physical Threats

Plaintiff alleges that he was verbally abused and physically threatened by Defendants Arnone, Borawski, Bea, Brigzna and James for filing grievances.  He alleges that he was told at various times that he would be hanged in his cell, that all of the bones in his body would be broken, that he would be sent to his mother in a black box, and that he would have his "black ass kicked," all because he repeatedly filed grievances against prison staff.  Plaintiff further maintains that he was called a "black nigger bitch," a rat, and a "pain in the ass."  He also maintains that Defendants Morris and Mezydlo told other inmates that they would not receive any favors because of Plaintiff's complaints about prison staff.

### 2.      The Restraining Order

On February 16, 2003, while Plaintiff was at Great Meadow, he was under a restraining order because of his continued threats and assaults against staff members. (James Decl., ¶ 7.)  Defendant James, Deputy Superintendent of Security at Attica, continued this order when Plaintiff was transferred to Attica.  (Defendants' Statement, ¶¶ 4, 5.)  Defendant James is authorized to impose such an order under 7 NYCRR § 305.4, which provides as follows:

Section 305.4 Restraint orders.

(a) Any inmate assigned to an SHU who has history of assaultive behavior and/or who presents a threat to the safety or security of himself/herself, other persons, or State property may be placed under a restraint order by the deputy superintendent for security or, in his/her absence, the O.D. or higher ranking authority.

(b) A restraint order will be valid for no more than seven days and may be renewed by the deputy superintendent for security or, in his/her absence, the O.D. or higher ranking authority.

(c) A copy of the restraint order and any renewal thereafter must be forwarded to the superintendent and the inmate within 24 hours. The order and any renewal thereafter must briefly state the reason(s) for the order or renewal and contain the following notice to the inmate: "You may write to the deputy superintendent for security or his/her designee to make a statement as to the need for continuing the restraint order."

(d) A restraint order will describe the types of restraints to be used and the manner in which they are to be applied (*e.g.,* handcuffed in front or in back, with or without waist chain, with or without leg irons).

(e) If an inmate is under a restraint order directing that he/she be mechanically restrained whenever he/she leaves the SHU cell for any reason, the inmate will remain mechanically restrained during the entire period of time he/she is out of the SHU cell, except:

> (1) upon request of a physician, nurse practitioner, or a physician's assistant (P.A.) when removal is necessary to permit medical treatment;

> (2) upon request of the Parole Board at a parole hearing;

> (3) upon the request of a judge or magistrate;

> (4) when the inmate can be secured in a shower room during the scheduled shower period;

> (5) when the inmate has been secured in the exercise area, unless the restraint order (or renewal) includes a

4

written determination stating the reason(s) why the removal of restraints in the exercise area would, in the light of the particular circumstances relative to the affected inmate, present a treat to the safety or security of the inmate, other persons or State property. Such a determination, in any restraint order or renewal, shall only remain in effect for three days unless approved in writing by the superintendent or acting superintendent, based upon his or her review of the relevant facts. Note: This paragraph does not apply to Southport Correctional Facility;

(6) upon order of the deputy superintendent for security services or higher ranking authority; or

(7) when in a general population visiting room and not in a noncontact area.

(f) When mechanical restraints are removed pursuant to subdivision (e) of this section, they will be reapplied as specified in the restraint order prior to return to the SHU cell.

7 NYCRR § 305.4

Defendant James reviewed this order each week, and continued to renew the order through September 12, 2003, at which time the DOCS stopped using this type of restraining order.  (Defendants' Statement, ¶¶ 6, 7, 9.)  Defendant James continuously renewed his restraining order because he believed it was necessary to prevent Plaintiff from committing further acts of violence against staff and other inmates.  (Defendants' Statement, ¶ 8.)

Plaintiff maintains that there was no cause for the restraining order and that Defendant James kept it in place as a punitive measure for Plaintiff's filing of grievances. (Complaint, p. 10.)  He further alleges that Defendant James repeatedly renewed the restraint order because Plaintiff refused to participate in the STP, despite Defendant

James' encouragement of him to do so.  (Complaint, pp. 10-11, 12.)

### 3.    The Cell Shield Order

Along with the restraining order, Defendant James found cause to issue a cell shield order against Plaintiff based on his continued threats against staff and his unhygienic acts. (Defendants' Statement, ¶¶ 11, 13.)  Defendant James is authorized to impose such an order under 7 NYCRR § 305.6, which provides as follows:

> Section 305.6 Use of cell shields.
>
> (a) A cell shield is a transparent cell front covering, equipped to provide adequate ventilation.
>
> (b) Cell shields may be ordered for good cause, including but not limited to the reasons listed below:
>
>> (1) Spitting through the cell door, or the throwing of feces, urine, food, or other objects through the cell door.
>>
>> (2) The inmate refuses to keep his/her hands within the cell and/or otherwise attempts to assault or harass staff.
>>
>> (3) The inmate is so disruptive as to adversely affect the proper operation of the unit.
>
> (c) Use of the cell shield shall be ordered by the deputy superintendent for security or, in his/ her absence, the O.D. or higher ranking authority. The cell shield order shall be valid for no more than seven days and may be renewed by the deputy superintendent for security or, in his/her absence, the O.D. or higher ranking authority.
>
> (d) A copy of the cell shield order and any renewal thereafter shall be forwarded to the superintendent and the inmate within 24 hours. The order and any renewal thereafter shall briefly state the reason for the order or renewal and contain the following notice to the inmate: "You may write to the deputy superintendent for security or his/her designee to make a statement as to the need for continuing the cell shield order."

7 NYCRR § 305.6

Defendant James renewed this order on a weekly basis from February 28, 2003, through April 25, 2003, at which point he discontinued it because Plaintiff was housed on the third floor of the SHU, which had permanent plexiglass shields on the cells. (Defendants' Statement, ¶¶ 13, 14, 16; James Decl., ¶ 25.)

Again, Plaintiff maintains that there were no grounds for this order and that Defendant James kept the order in place to retaliate against him for filing grievances against prison staff.

### 4.    The Opening of Legal Mail

On August 22, 2003, Defendant Welsh received a letter from Prisoners Legal Services that was addressed to Plaintiff, but contained the identification number of another inmate. (Defendants' Statement, ¶ 17; Welsh Decl., ¶ 6.)  Because of this discrepancy, Defendant Welsh advised Plaintiff that the letter would be opened in his presence to determine whether it was in fact intended for him, and to inspect it for contraband. (Defendants' Statement, ¶ 18.)  Defendant Welsh opened the letter in Plaintiff's presence in an interview room, examined it briefly, and determined that it was intended for Plaintiff. (Defendants' Statement, ¶ 19; Welsh Decl., ¶¶ 6-8.)  Defendant Welsh did not read the letter, nor did he question Plaintiff regarding the nature of the letter.  (Defendants' Statement, ¶ 20.)

Plaintiff alleges that Defendant Welsh opened and read his legal mail and then asked him whether he filed another complaint against the prison.  (Complaint, p. 16.) Plaintiff allegedly responded that he was not required to discuss his legal proceedings.

(Complaint, p. 16.)

### 5.     Pat-Frisk

On September 17, 2003, Defendant Brigzna conducted a pat-frisk on Plaintiff before Plaintiff went to the shower.  (Defendants' Statement, ¶ 21.)  A pat-frisk search requires searching the buttocks and groin areas, which are favored areas for concealing contraband.  (Defendants' Statement, ¶ 23.)  This type of search is required for every inmate who enters or leaves the SHU, and is authorized by 7 NYCRR § 305.1 as follows:

> Section § 305.1 Frisks.
>
> In accordance with the provisions of directives concerning "Control of and Search for Contraband," the following procedures will be followed in such designated special housing units.
> . . .
>
> (b) *Pat frisk.* An inmate will be pat-frisked whenever he goes out of or returns to the SHU; and/or prior to and upon returning from any exercise periods, hearings, interviews, etc.

7 NYCRR § 305.1.

Plaintiff did not seek medical attention after the pat-frisk, despite the availability of medical staff through regular rounds in the SHU.  (Defendants' Statement, ¶ 25.)  However, Plaintiff sought medical attention three days later, on September 20, 2003, complaining of mild pain in his testicle.  (Defendants' Statement, ¶¶ 26, 27.)  Dr. Stephan Lakowski examined Plaintiff and found no evidence of swelling.  (Defendants' Statement, ¶ 27.)

Plaintiff maintains that Defendant Brigzna slapped his right testicle "very hard" during the pat-frisk, and  then "felt [his] left side ass."  (Complaint, p. 18.)  Plaintiff asserts that he asked to see medical personnel immediately after the pat-frisk because his testicle

8

hurt, but that his request was denied and he was told that he would be cited for assault if he persisted in his bid for medical assistance.  (Complaint, p. 18.)

## III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Since Plaintiff is proceeding pro se, this Court has considered his submissions and arguments accordingly.

Plaintiff argues that Defendants took the measures discussed above in retaliation for his numerous grievances and in violation of his constitutional rights under the First, Eighth and Fourteenth Amendments.  Defendants do not deny that these events took place (other than the verbal threats and denial of medical care), but rather, maintain that there is a legitimate reason for each action taken, and that none of Plaintiff's constitutional rights were violated.  Moreover, they maintain that even if a constitutional violation occurred, they are entitled to the protections of qualified immunity.  The parties' respective positions are discussed below.

## A.	Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R.

CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 248.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970).  However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**B.     42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).   Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Plaintiff's various § 1983 claims are grounded in the First, Eighth and Fourteenth Amendments.

**C.     Personal Involvement**

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983.  See Haygood v. City of New York, 64 F.Supp.2d 275, 280 (S.D.N.Y. 1999).  Moreover, it is well settled in this Circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983.  See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F.Supp.2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).  The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black

v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

Defendants LeClaire, Knapp-David and Selsky argue that they must be dismissed because Plaintiff's Complaint does not contain any allegations against them.  Plaintiff contends that these defendants were personally involved because they failed to act on letters that he sent them complaining about threats and other mistreatment, and requesting a transfer out of Attica.  (Plaintiff's June 19, 2006 Decl., p. 5.)

The fact that Plaintiff sent letters of complaint to Defendants LeClaire, Knapp-David and Selsky is insufficient to maintain a § 1983 claim against them.  Courts have consistently held that the mere receipt of a letter does not render a supervisor personally liable.  See Hyman v. Holder, No. 96 Civ. 7748 (RCC), 2001 WL 262665, *6 (S.D.N.Y. 2001) (no personal involvement where inmate wrote letter to supervisor, who then forwarded it to deputy); see also Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Richardson, 101 F.Supp.2d at 131; Thomas v. Coombe, 95 Civ. 10342, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998); Gayle v. Lucas, 97 Civ. 883, 1998 WL 148416, at *4 (S.D.N.Y. Mar. 30, 1998).

It appears that Plaintiff is suing each of these defendants simply because they held supervisory positions.  Such allegations are insufficient to establish the required level of personal involvement.  See Black, 76 F.3d at 74 ("a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority").  There is no evidence (or allegation) that Defendants LeClaire, Knapp-David or Selsky were personally involved in the alleged constitutional deprivations or had direct knowledge thereof.  As such, these defendants are entitled to summary

12

judgment and will be dismissed.

**D.    Verbal and Physical Threats**

As indicated, Plaintiff alleges that he was verbally abused and physically threatened by Defendants Arnone, Borawski, Brigzna, Bea and James.  Defendants vigorously deny these allegations.  (Brigzna Decl., ¶¶ 12, 15; James Decl., ¶¶  5, 16, 17.)  Nonetheless, even assuming that these defendants insulted and threatened Plaintiff in the manner that he alleges, this Court finds that no constitutional violation occurred.

Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983.  See Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986)(per curiam)(finding that a claim that a prison guard called an inmate a name does not allege any appreciable injury); see also Rivera v. Goord, 119 F.Supp.2d 327, 342 (S.D.N.Y. 2000) (collecting cases). Moreover, the use of racial epithets, racially prejudicial insults and name-calling, without more, does not violate the Constitution.  See Cuoco v. U.S. Bureau of Prisons, No. 98 Civ. 9009, 2001 WL 167694, at *3 (S.D.N.Y. Feb. 16, 2001) (finding that although abhorrent, verbal harassment and profanity do not violate an inmate's constitutional rights); Brown v. Croce, 967 F.Supp. 101, 104 (S.D.N.Y. 1997) (racial slurs and epithets not actionable); Jeromosen v. Coughlin, 878 F.Supp. 444, 449 (N.D.N.Y. 1995) (same).

There is no evidence in the record to support a finding that Plaintiff was injured by or as a result of the verbal abuse and physical threats that he alleges Defendants' directed at him.  Indeed, Plaintiff does not assert that he suffered any physical injury.  As such, he does not state a constitutional claim under § 1983, and Defendants Arnone, Borawski, Brigzna, Bea and James are entitled to summary judgment.

13

**E.     The Restraining and Cell Shield Orders**

Plaintiff contends that Defendant James' imposition of the restraining and cell shield orders violated his Eighth Amendment rights.  Prison officials have wide latitude to place restraints on inmates and only violate the Eighth Amendment if the imposed restraint is "totally without penological justification, grossly disproportionate, or involves the unnecessary and wanton infliction of pain."  Horne v. Coughlin, 155 F.3d 26, 31 (2d Cir. 1998) (citations omitted).

There are no disputed issues of fact on this claim.  Plaintiff concedes that Defendant James imposed the restraint and cell shield orders pursuant to 7 NYCRR §§ 305.4 and 305.6 because of his disciplinary history, including 44 previous Misbehavior Reports. (Plaintiff's June 19, 2006 Decl., pp. 13, 14.)  Plaintiff simply contends that, in his judgment, he was not a threat to security.  (Id.)  While Plaintiff may hold this belief, the fact remains that Defendant James was authorized to impose the restraining and cell shield orders under the regulations, and he did so for a legitimate, penological purpose.  Defendant James reviewed the propriety of the orders on a weekly basis as required and determined that continuation was warranted.  (James Decl., ¶¶ 9, 21.)  As such, there is no violation of the Eighth Amendment.  See Dabney v. McGinnis, 97 CV 489, 2006 WL 1285625, at *5 (W.D.N.Y. May 9, 2006) (upholding use of restraint order to shackle inmate for exercise); DeMaio v. Mann, 877 F.Supp. 89, 93 (N.D.N.Y. 1995) (use of plexiglass shield on cell that does not interfere with air flow does not violate the Eighth or Fourteenth Amendment).

To the extent Plaintiff claims a Fourteenth Amendment violation based on a denial of Due Process, "it has been held that the daily review of deprivation orders, the availability

14

of the inmate grievance program, and the fact that the inmate has a judicial remedy to challenge deprivation orders, and restraining orders, under CPLR article 78 clearly provide due process of law." Dawes v. Coughlin, 964 F.Supp. 652, 658 (N.D.N.Y. 1997). Moreover, "courts in this Circuit have found that a prison inmate in New York has no protected liberty interest in confinement in an unshielded cell." Breazil v. Bartlett, 998 F.Supp. 236, 243 (W.D.N.Y. 1997) (citing DeMaio, 877 F.Supp. at 93 and Young v. Scully, 91 Civ. 4332, 1993 WL 88144, at *3 (S.D.N.Y. Mar. 22, 1993)).  As such, no violation of the Fourteenth Amendment occurred.

Accordingly, this Court finds that Defendant James is entitled to summary judgment on this claim.

## F.    The Opening of Legal Mail

Plaintiff argues that Defendant Welsh's opening and examination of his legal mail violated his constitutional rights.  Inmates retain a recognized right under the First Amendment to the free flow of their incoming and outgoing mail subject to reasonable restrictions related to legitimate penological interests. See Thornburgh v. Abbott, 490 U.S. 401, 413-415, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1999); Heimerle v. Attorney Gen., 753 F.2d 10, 12-13 (2d Cir. 1985).  To maintain a claim, however, an inmate must demonstrate more than a single instance of interference with his mail. See Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation"); Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986) (isolated incident of interference with inmate's mail insufficient to state a claim under § 1983); Morgan v. Montayne, 516 F.2d 1367, 1372 (2d Cir. 1975) (same).  Rather, to establish a violation, an inmate must demonstrate that prison officials "regularly and

15

unjustifiably interfered with the incoming legal mail." Davis, 320 F.3d at 351 (citations omitted).

Here, Plaintiff alleges only a single incident of mail interference that did not result in any identifiable harm. Even assuming that Defendant Welsh read Plaintiff's letter, which he denies doing, Plaintiff fails to state a constitutional claim. In addition, it is undisputed that the piece of legal mail in question was addressed to Plaintiff but contained a different inmate's identification number. (Welsh Decl., ¶ 6.) Thus, Defendant Welsh properly opened the letter, in Plaintiff's presence, to determine its rightful owner and whether it contained contraband. See Word v. Croce, 169 F.Supp.2d 219, 228 (S.D.N.Y. 2001) ("prison officials may open incoming mail to ensure that no contraband is contained in the correspondence") (quoting Webster v. Mann, 917 F.Supp. 185, 187 (W.D.N.Y. 1996). Accordingly, Defendant Welsh is entitled to summary judgment on Plaintiff's claim that he violated his First Amendment rights.

## G.     Pat-Frisk and Request for Medical Care

### 1.     The Pat-Frisk

Plaintiff alleges that Defendant Brigzna violated his Eighth Amendment rights by using excessive force against him when he allegedly slapped him in his right testicle during the pat-frisk. Moreover, Plaintiff maintains that Defendant Brigzna sexually assaulted him during the pat-frisk by fondling his buttocks.

Defendant Brigzna denies that he assaulted Plaintiff and notes that Plaintiff's grievance of this incident was denied because the investigation revealed that Plaintiff's allegations were without merit. (Brigzna Decl., ¶¶ 5-8.) Moreover, Defendant Brigzna

contends that the investigator noted in his report that the video surveillance tape revealed that Defendant Brigzna did not strike Plaintiff in the groin or fondle his buttocks during the pat-frisk.  (Brigzna Decl., ¶ 8.)

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."   Wilson v. Seiter, 501 U.S. 294, 297, 11 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991).  "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being."  Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (quotation and citation omitted).  Part of the state's duty is to protect inmates from punishments that are "totally without penological justification."  See Williams v. Fitzpatrick, No. 03 CV 11, 2006 WL 1889964, at *2 (D.Vt. July 10, 2006) (quoting Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

Plaintiff's Eighth Amendment excessive force claim is evaluated under the familiar two-prong inquiry.  See  Warren v. Chakravorty, No. 03 Civ. 8736, 2006 WL 2067736, at *7 (S.D.N.Y. July 25, 2006).  That is, both an objective and subjective prong must be satisfied.  To meet the objective prong, the alleged violation must be "sufficiently serious" by objective standards.  Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  To meet the subjective prong, the inmate must show that the prison officials involved had a wanton state of mind when they engaged in the misconduct.  See Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) (quoting Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir. 1994)).

As noted, Plaintiff alleges that Defendant Brigzna used excessive force when he

17

allegedly slapped him in his right testicle during the pat-frisk.   This Court finds that Defendant Brigzna is entitled to summary judgment on this claim for several reasons.

First, Plaintiff has not presented any evidence that this incident actually took place. He rests only on his bare accusations.  See FED. R. CIV. P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial"); see Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994) ("mere allegations or denials" not enough to defeat summary judgment); Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (conclusory allegations and unsubstantiated speculation cannot defeat summary judgment). Defendants, on the other hand, have presented evidence that an internal investigation revealed that Plaintiff's present allegations have no merit.  (Brigzna Decl., ¶¶ 5-8.)  This determination was also upheld on internal appeal.  (Brigzna Decl., ¶ 9.)

Second, even assuming that Defendant Brigzna's hand came into contact with Plaintiff's testicle, there is no evidence whatsoever that Defendant Brigzna took such action as a punitive measure against Plaintiff.  Plaintiff does not dispute that 7 NYCRR 305.1 requires that inmates entering or leaving the SHU be pat-frisked by officers.  He may disagree with the regulation, but Plaintiff does not dispute that Defendant Brigzna conducted the pat-frisk because Plaintiff was leaving the SHU to go to the showers.  Thus, Defendant Brigzna acted with a legitimate penological purpose pursuant to the regulation.

Third, even assuming that Defendant Brigzna slapped Plaintiff's testicle as alleged, Plaintiff's claim fails.  There is no medical evidence establishing that Plaintiff suffered a serious injury, and even if there was, there is no evidence from which a reasonable trier

18

of fact could conclude that Defendant Brigzna acted maliciously.  See Green v. Morse, No. 00-CV-6533, 2005 WL 1490301, at *3 (W.D.N.Y. June 23, 2005) ("even if the harm inflicted is not significant, if plaintiff can show malicious intent then the objective prong will [ ] almost always be satisfied"); Griffin, 193 F.3d at 91 (malicious use of force to cause harm constitutes an Eighth Amendment violation per se whether or not significant injury is evident).

The subjective inquiry requires this Court to determine whether there is evidence from which it could be concluded that the prison officials involved had a wanton state of mind when they engaged in the misconduct.  See Davidson, 32 F.3d at 30.  Put another way, the "core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Warren, 2006 WL 2067736, at *7 (quoting Hudson v. McMillian, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).  In light of the complete absence of any evidence that Defendant Brigzna acted with a wanton state of mind and the existence of evidence that he in fact acted with a legitimate penological purpose, this Court finds that no reasonable jury could find that Defendant Brigzna violated Plaintiff's Eighth Amendment rights.

Finally, to the extent Plaintiff asserts that Defendant Brigzna sexually abused or assaulted him, Defendant Brigzna denies committing such an act (Brigzna Decl., ¶ 7) and, in any event, the Second Circuit has determined that an isolated act of alleged sexual touching is insufficient to state an Eighth Amendment claim.  Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir. 1997); Young v. Poff, No. 04 CV 320, 2006 WL 1455482, at *3 (W.D.N.Y. May 22, 2006) (discussing Boddie).

Accordingly, this Court finds that Defendant Brigzna is entitled to summary judgment

19

on Plaintiff's claim that he used excessive force and sexually assaulted him in violation of his Eighth Amendment rights.[2]

### 2.    Request for Medical Care

Plaintiff also maintains that Defendants Brigzna, Welsh and Morris ignored his requests to see medical personnel following the pat-frisk and refused to provide him medical care in violation of the Eighth Amendment.

The Eighth Amendment to the United States Constitution applies to the States through the Fourteenth Amendment, and "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson, 501 U.S. at 297; U.S. Const. amend. VIII.  As such, prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment.  See DeShaney v. Winnebago County Dept. of Social Svcs., 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989).  In addition, the Supreme Court has recognized that a prisoner's claim that he was intentionally denied medical treatment is cognizable under the Eighth Amendment and § 1983:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once

---

[2] To the extent that Plaintiff argues that the mere fact that he was subjected to a pat-frisk violated his Eighth Amendment rights, that claim also fails.  Conditions of confinement violate the Eighth Amendment only when "they result 'in unquestioned and serious deprivations of basic human needs' or 'deprive inmates of the minimal civilized measure of life's necessities.'" Anderson v. Coughlin, 757 F.2d 33, 34-35 (2d Cir. 1985)(quoting Rhodes, 452 U.S. at 347). There is simply no evidence that Plaintiff suffered a serious deprivation of his basic human needs as a result of being pat-frisked.

> prescribed.    Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.
>
> . . .
>
> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.   It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 104, 106, 97 S.Ct. 285, 291, 292, 50 L.Ed.2d 25 (1976)(quotations and citations omitted).

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (citing Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)).  With respect to a claim of deliberate indifference to a serious medical need, a prisoner must show that he suffered from a "sufficiently serious" medical condition, see Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), and that the defendants acted with a "sufficiently culpable state of mind," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

The subjective component "requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." Sims, 230 F.3d at 21 (citations omitted).    The objective component is "contextual and responsive to contemporary standards of decency." Id. (quoting Hudson, 503 U.S. at 8).

"An official acts with the requisite deliberate indifference when

21

> he 'knows of and disregards an excessive risk to inmate health
> or safety; the official must be both aware of facts from which
> the inference could be drawn that a substantial risk of serious
> harm exists, and he must also draw the inference.'"

Brown v. Picarelli, No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15,

2003)(quoting Farmer, 511 U.S. at 837).

This Court finds that Plaintiff has failed to demonstrate the existence of any genuine

issue of material fact regarding his Eighth Amendment denial of medical treatment claim.

Defendants Brigzna and Welsh deny that Plaintiff ever requested medical attention after

the pat-frisk (Brigzna Decl., ¶ 10; Welsh Decl., ¶ 12), but even assuming that he did, this

Court finds that Plaintiff's claim fails.

First, Plaintiff has failed to present competent evidence demonstrating that he

suffered a sufficiently serious injury to his right testicle as a result of the pat-frisk.  More

than minor discomfort or injury is required to demonstrate a serious medical condition

implicating the Eighth Amendment.  See Evering v. Rielly, No. 98 CIV. 6718, 2001 WL

1150318, *9 (S.D.N.Y. Sept. 28, 2001).  At most, Plaintiff received some pain medication,

but there is no evidence that he suffered a lasting injury.  In fact, Defendants presented

evidence that Dr. Stephan Lakowski found no sign of swelling and that Plaintiff reported

only mild pain.  (Murphy May 12, 2006 Decl., ¶ 3 and Exhibit A.)

The Second Circuit has set forth a number of factors to be considered when

determining whether a serious medical condition exists.  See Chance, 143 F.3d at 702.

These factors include, but are not limited to, "the existence of an injury that a reasonable

doctor or patient would find important and worthy of comment or treatment; the presence

of a medical condition that significantly affects an individual's daily activities; or the

existence of chronic or substantial pain." <u>Chance</u>, 143 F.3d at 702 (quoting <u>McGuckin v.</u> <u>Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citations omitted)).

There are numerous examples of injuries that courts have found to be too lacking in seriousness to raise Eighth Amendment concerns. <u>See</u>, <u>e.g.</u>, <u>Rivera v. Johnson</u>, No. 95 CIV. 0845E(H), 1996 WL 549336 at *2 (W.D.N.Y. Sept. 20, 1996) (broken finger); <u>Glasper v. Wilson</u>, 559 F.Supp. 13 (W.D.N.Y. 1982) (lack of immediate medical attention for bowel problems); <u>Sonds v. St. Barnabas Hosp. Corr. Health Servs.</u>, 151 F.Supp.2d 303 (S.D.N.Y. 2001) (cut finger); <u>Henderson v.  Doe</u>, No. 98 CIV. 5011, 1999 WL 378333 (S.D.N.Y. June 10, 1999) (broken finger); <u>Gibson v. McEvers</u>, 631 F.2d 95, 98 (7th Cir. 1980) (cold symptoms); <u>Dickson v.  Colman</u>, 569 F.2d 1310 (5th Cir. 1978) (per curiam) (headaches); <u>Tyler v.  Rapone</u>, 603 F.Supp. 268 (E.D.Pa. 1984) (toothache and cut).

There are also numerous examples of injuries found to be sufficiently serious to satisfy the Eighth Amendment standard. <u>See</u> <u>Neitzke v.  Williams</u>, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (brain tumor); <u>Hathaway</u>, 37 F.3d at 66 (two year delay in arranging hip surgery); <u>Williams v. Vincent</u>, 508 F.2d 541, 544 (2d Cir. 1974) (loss of an ear); <u>Corby v. Convoy</u>, 457 F.2d 251 (2d Cir. 1972) (serious nasal problem); <u>Monmouth</u> <u>County Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987) (abortion); <u>Griffin</u> <u>v. DeRobertis</u>, 557 F.Supp 302, 306 (N.D.Ill. 1983) (spitting up blood).

The minor pain and discomfort Plaintiff reported in his testicle clearly falls into the former category of injuries that are not sufficiently serious to raise an Eighth Amendment claim.  There is simply no suggestion in the record, let alone any evidence, that Plaintiff suffered from an untreated medical condition that was "sufficiently serious, in the sense that [it was] a condition of urgency, one that may produce death, degeneration, or extreme

23

pain." <u>Hemmings v. Gorczyk</u>, 134 F.3d 104, 108 (2d Cir. 1998).

Second, even assuming that Plaintiff could establish that he suffered a sufficiently serious injury such that he is able to meet the objective component of an Eighth Amendment claim, this Court finds that he cannot meet the subjective component because there is no evidence that Defendants Brigzna and Welsh acted wantonly.  In fact, Plaintiff admits that he received medical attention for his alleged injury, although not immediately when he requested it.  It is therefore undisputed that Defendants provided medical care. (Murphy May 12, 2006 Decl., Exhibit A.)  To the extent Plaintiff argues that his rights were violated because he did not receive medical attention immediately upon his request, this Court notes that Plaintiff is not entitled to choose his own course of treatment.  <u>See</u> <u>Armstrong</u>, 143 F.3d at 703 ("it is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").  Plaintiff simply cannot demonstrate that Defendants Brigzna and Welsh acted with a sufficiently culpable state of mind to meet the deliberate indifference standard.  <u>See</u> <u>Hathaway</u>, 37 F.3d at 66.

Accordingly, for the reasons stated above, this Court finds that Defendants Brigzna, Welsh and Morris are entitled to summary judgment on Plaintiff's claim that they denied him adequate medical care in violation of his Eighth Amendment rights.

**H.    Retaliation**

Plaintiff claims that Defendants Arnone, James, Borawski, Bea, Welsh, Brigzna, Mezydlo, Morris and Conway retaliated against him in various ways because he repeatedly filed grievances against Attica staff members.  Plaintiff argues that Defendants took all of

the actions discussed above – the verbal and physical threats, the restraining and cell shield orders, the opening of his legal mail, the pat-frisk, and the denial of medical treatment – in retaliation for his filing of grievances.

It is well established that prison officials cannot retaliate against inmates for exercising their constitutional rights.  See Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002); Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988).  The Second Circuit has cautioned that courts "must approach prisoner claims of retaliation with skepticism and particular care" because such claims are "prone to abuse" and can be easily fabricated. See  Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002); Colon, 58 F.3d at 872; Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983).

To prove a retaliation claim under the First Amendment, an inmate must establish the following:

> (1) that the speech or conduct at issue was protected;
>
> (2) that the defendant took adverse action against the plaintiff, and
>
> (3) that there was a causal connection between the protected speech and the adverse action.

Gill v. Pidlypchack, 389 F.3d 379, 380 (2d Cir. 2004) (citing Dawes, 239 F.3d at 492).

For purposes of the second requirement, adverse action is defined as one "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."  Gill, 389 F.3d at 380 (citing Davis, 320 F.3d at 353).  "If the action would not deter an individual of ordinary firmness the retaliatory act 'is simply de minimis and therefore outside the ambit of constitutional protection."  Islam v. Goord, No. 05 Civ.

25

7502, 2006 WL 2819651, at *4 (S.D.N.Y. Sept. 29, 2006) (citing Davis, 320 F.3d at 353).

Here, it is undisputed that Plaintiff repeatedly filed grievances against prison staff members, which undoubtedly constitutes a constitutionally protected activity. See Gayle, 313 F.3d at 682. However, Plaintiff has failed to demonstrate that Defendants' actions, even assuming that they would deter an individual of ordinary firmness from filing grievances, were causally connected to his protected speech or would not have been imposed otherwise for penological reasons.

As discussed at length above, there exist legitimate, penological reasons for the restraining and cell shield orders, the opening of Plaintiff's mail, and the pat-frisk. Moreover, Plaintiff has not come forward with any evidence that he was denied medical treatment, and in fact, the evidence of record demonstrates that Plaintiff received treatment for the pain and discomfort he felt in his testicle. In any event, these are not the types of harms that courts in this circuit typically consider significant enough to constitute adverse actions. See Islam, 2006 WL 2819651, at *6 (collecting cases including Morales v. Mackalm, 278 F.3d 126, 131-32 (2d Cir. 2002) (transfer to psychiatric facility); Graham v. Henderson, 89 F.3d 75, 80-81 (2d Cir. 1996) (false misbehavior reports); Colon, 58 F.3d at 872-73 (planted contraband in plaintiff's cell); Gill v. Hoadley, 261 F.Supp.2d 113, 124 (N.D.N.Y. 2003) (false misbehavior report resulting in keeplock confinement for almost fifty days)).

That leaves only the alleged verbal and physical threats. Even assuming that Defendants insulted and threatened Plaintiff as he alleges, "threats made to an inmate, without more, do not rise to the level of a constitutional violation." Pledger v. Hudson, No. 99 Civ. 2167, 2005 WL 736228, at *5 (S.D.N.Y. Mar. 31, 2005). The threats at issue here,

such as "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" and the alleged statement to other prisoners that no favors would be granted because of Plaintiff's grievances, are indistinguishable from those that have been found insufficient to establish a constitutional violation.  See, e.g., Bartley v. Collins, 95 Civ. 10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action"); Alicea v. Howell, 387 F.Supp.2d 227, 237 (W.D.N.Y. 2005) ("alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance . . . do not rise to a First Amendment retaliation claim"); Williams v. Muller, No. 98 Civ. 5204, 2001 WL 936297, at *4 (S.D.N.Y. Aug. 17, 2001) (defendant's "alleged spreading of rumors [that] plaintiff's claims . . . were intended to incite the inmates to harm plaintiff . . . do not rise to a retaliation claim").

Here, Plaintiff has not presented any evidence that the threats he alleges were leveled at him resulted in any further action or injury.  Indeed, they are exactly the types of threats that have been found to be insufficient to sustain a First Amendment claim. Accordingly, this Court finds that Defendants Arnone, James, Borawski, Bea, Welsh, Brigzna, Mezydlo, Morris and Conway are entitled to summary judgment on Plaintiff's retaliation claim.

## I.      Qualified Immunity

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 1696,

143 L.Ed.2d 818 (1999) (internal quotations and citation omitted).  In light of the fact that this Court finds that Defendants did not infringe Plaintiff's constitutional rights, it is unnecessary to reach the merits of Defendants' alternate qualified immunity argument.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 34) is GRANTED.

FURTHER, that Plaintiff's Motion to Compel Discovery (Docket No. 33) is DENIED as moot.[3]

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:        March 10, 2007
              Buffalo, New York

                                        /s/William M. Skretny
                                         WILLIAM M.  SKRETNY
                                         United States District Judge

---

[3]Plaintiff filed a Motion to Compel Discovery that he alleges Defendants failed to provide. Defendants' counsel indicates in opposition that the relevant requested discovery was provided, and that Plaintiff's other discovery demands fall outside the relevant time period.  (Murphy May 12, 2006 Decl., ¶¶ 5-11.)  This Court has reviewed Plaintiff's motion and concludes that Defendants' discovery production is proper, and that the requested discovery, even if it was not already provided, would not alter this Court's determination that Defendants are entitled to summary judgment in this case.